ROBERT GIBBONS, SURVIVOR, &C., V. EUGENE ROBINSON
AND JESSE H. FARWELL.

[See 58 Mich. 233.]

*Sale of goods—Delivery—When title passes—Bill of lading—
Evidence.*

1. Defendants contracted with one McKay for the purchase of a
quantity of cedar posts of *specified* dimensions, to be delivered
on or before *specific* dates, *over rail* of vessel, at such points at
the head of Lake Huron as he should *thereafter* designate;
McKay to give them ten days' notice of time when he was ready
to deliver *each* load, and payment to be made *on delivery.*
McKay assigned the contract to a firm of which plaintiff is the
surviving member, on the day it was made, and, as agent for his
assignees, gave the required notice, and delivered to the captain
of a vessel sent by the defendants, and on their order, a quantity
of posts, giving to the captain a bill of lading of the property as
*on board* the vessel, in *good order*, to be delivered to the said
assignees on payment of a specified freight. He testified that he
made out the bill of lading at the captain's request, informing
him that the posts belonged to the defendants; that he had made
a *delivery* of same to them *according to the contract*, and made
no further claim to the property. The posts reached Detroit,
where they were measured and landed, but no delivery was
made or tendered to defendants *after* such arrival. Plaintiff, as
surviving partner, sued defendants on a common-count declara-
tion for the *value* of the posts, and on the trial a verdict was
directed for the defendants on the ground that the bill of lading
showed *conclusively,* as matter of law, that there had been no
delivery to defendants of the property.

    *Held,* that, as between the parties, the question as to whether
the posts were *delivered* to the defendants at the *time* they were
passed over the rail of the vessel, in view of the facts and what
subsequently transpired, should have been submitted to the
jury.

2. An *unconditional* sale of *specific* chattels passes the title at *once,*
and the risk of loss is upon the purchaser, who has the right to
*immediate* possession; but if anything remains to be done by way
of making a *specific* appropriation of the goods sold to the con-
tract, the agreement is *executory,* and, until such appropriation

is made, the property does not pass.  When, from the terms of the contract, such appropriation is to be made by the vendor, and the property is *set apart* with the intention of *unconditionally* applying it in fulfillment of the contract, the title passes, and the sale is complete.

3. A bill of lading constitutes a contract between the parties thereto, and is evidence of the receipt of the goods, of their condition when received, of the contract of carriage, and to whom they are to be delivered.  It is not, however, *conclusive* evidence of such receipt or condition between the owner and shipper; but, so far as it is an undertaking to *transport* and *deliver* the goods as therein stipulated, in the absence of fraud or mistake, its terms cannot be altered or varied by *parol* proof where it forms the basis or subject-matter of an action between the parties to the contract.

Error to superior court of Detroit.  (Chipman, J.) Argued July 14, 1886.  Decided October 14, 1886.

Assumpsit.  Plaintiff brings error.  Reversed.  The facts are stated in the opinion.

*Atkinson & Atkinson* (*Alfred Russell*, of counsel), for appellant:

As between the consignees and the owner of the boat, a delivery to the owners, E. Robinson & Co., would have been a protection for the vessel against any claim of the consignees: *Hentz v. Steamship Idaho*, 93 U. S. 575; *Walker v. Detroit, G. H. & M. R. R. Co.*, 49 Mich. 446; *Gibbons v. Farwell*, 58 Id. 233.

*Moore & Canfield*, for defendants:

When anything remains to be done for the purpose of ascertaining the price, as by measuring or testing the goods where the price depends on their quality, such measuring or testing is a condition precedent to the transfer of the property: Benj. Sales, §§ 319, 352; *Lingham v. Eggleston*, 27 Mich. 324; *Wilkinson v. Holiday*, 33 Id. 386; *Prescott v. Locke*, 51 N. H. 94.

If Johnstone & Gibbons had transferred the bill of lading to an innocent indorsee for value, the title to the posts would have been transferred: *Maybee v. Tregent*, 47 Mich. 495.

Parol evidence is not admissible to show that the cargo was to be delivered to any other person than the consignees named in the bill of lading: *McMillan v. Mich. S. & N. I. R. R. Co.*, 16 Mich. 113; *May v. Babcock*, 4 Ohio, 334; *The Delaware*, 14 Wall. 579.

CHAMPLIN, J. On the third day of August, 1880, John McKay entered into a written contract with defendants, who were copartners, as follows:

"Memorandum of agreement between John McKay, of Cheboygan, Michigan, party of the first part, and E. Robinson & Co., of Detroit, party of the second part, to wit:

"Party of first part, for and in consideration of the agreements of the party of the second part hereinafter expressed, does hereby covenant and agree to sell and deliver to party of second part, on rail of vessel, at such points at the head of Lake Huron as the party of first part may hereafter designate, ten to twelve hundred cords of sound cedar posts, from four to twelve inches in diameter, said posts to be delivered as follows: First cargo on or before the twenty-fifth of August, 1880, and the second on or before the fifteenth of September, 1880, and the balance on or before October 15, 1880.

"Party of first part is to give party of second part ten days' notice in advance of time he will be ready to deliver each load.

"Party of first part is to peel as much of the above as possible. And party of second part, for and in consideration of the covenants and agreements of party of first part hereinbefore expressed, does hereby covenant and agree to pay to party of first part the sum of five and 62-100 ($5.62) dollars per cord of 128 cubic feet for all of the peeled timber, and four and 12-100 ($4.12) dollars per cord of 128 cubic feet for the unpeeled, delivered as above, cash upon the delivery of each cargo.

"*Detroit, August* 3, 1880.                    JOHN McKAY.
                                        "E. ROBINSON & Co."

On the same day McKay, by a writing under seal, assigned said contract, and all his rights thereunder, to Robert F. Johnstone and Robert Gibbons, composing the partnership firm of Johnstone & Gibbons, of which the defendants had notice.

McKay got out cedar posts upon one of the Schneaux

islands at the head of Lake Huron, and defendants sent a vessel there, of which one Rose was captain, with an order upon McKay for a cargo of cedar posts, which the captain delivered to McKay.  In compliance with this order McKay put on board of the vessel, as he claims, 250 cords of cedar posts, about 50 cords of which were peeled. He also put on board a quantity of hop poles.  It appears that defendant Farwell was the owner of the vessel.  The lading of the vessel was completed on Sunday, and on the afternoon of that day she was towed to Duncan bay, off Cheboygan.  The next day, at the request of Captain Rose, McKay filled out and delivered to him a bill of lading, as follows:

"CHEBOYGAN, MICH., Sept. 4, 1880.

"Shipped in good order and well conditioned, by John McKay, as agent, for account and at the risk of whom it may concern, on board the barge Southampton, whereof H. Rose is master, bound for Detroit, Mich., the following articles, as herein marked and described, to be delivered in like good order and condition, as addressed in the margin, or to his or their assigns or consignees, upon paying the freight and charges as noted below (the dangers of navigation excepted).

"In witness whereof, the master or clerk of said vessel hath affirmed to —— bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void.

| MARKS. | NO. | WEIGHT. | LAKE FREIGHT. |
|---|---|---|---|
| Johnstone & Gibbons, Detroit, Mich. | 250 cords cedar posts 7,000 hop poles | More or less | $3.00 per cord on posts. |

[Signed]        "CAPT. H. ROSE."

The circumstances under which this bill of lading was given are narrated by the witness McKay as follows:

"Q.  State what took place between you and Captain Rose in relation to the bill of lading.

"A.  In Cheboygan, on Monday, while the barge was lying at anchor in the bay, Captain Rose asked me to make

out a bill of lading. I told him I had never made out one, and did not know why he wanted any; asked him why he wanted a bill of lading. He told me that he wanted it for the purpose of fixing the freight; that Farwell owned the barge, and that the posts belonged to Farwell & Robinson,— that is, to the company. I told him I had nothing to do with the freight, and he explained that he wanted to fix the freight at $3. He went in and got a blank bill of lading, and at his direction I made it out just exactly as he told me to. I never had made out one before, and never have since. I made it out just as he told me to. If he had said $4 a cord for freight I would have put it in."

He further testified that he considered he had nothing more to do with the posts; that he had made a delivery to Farwell & Robinson on the rail of the vessel according to the contract at Strachn's island, and had never claimed to own them since, or made any claim to them.

It appears that McKay proceeded immediately to Detroit, and delivered his duplicate of the bill of lading to Johnstone & Gibbons, who showed the same to defendants, and requested an advance upon it of three or four hundred dollars, and were told by Mr. Farwell to come around the next morning. It also appears that the cargo of cedar posts was seized at Port Huron, while in transit, under a writ of replevin sued out by one Smith, claiming to own the timber from which they were cut. The record does not disclose what became of this suit. It shows, however, that the posts reached Detroit, and were landed near the foot of Twelfth street, where they were measured, and found to contain 45 cords of peeled cedar posts and 205 cords of unpeeled. There is no testimony of any delivery made or tendered to defendants after the arrival of the cargo in Detroit.

This suit is brought by Robert Gibbons, as the surviving partner of Johnstone & Gibbons, against the defendants, to recover the value of the cedar posts above mentioned. The declaration is upon the common counts in assumpsit, and

is based upon a sale and delivery under the contract above set forth, and the assignment to plaintiff's firm.

Under this declaration it was necessary for the plaintiff to prove a sale and delivery of the cedar posts to the defendants.

Irrespective of the bill of lading, there was evidence which was undisputed that tended to prove a delivery of the posts over the rail of the vessel in accordance with the contract. Nothing is said in that instrument about inspection or measurement before delivery, and no question is made in the record that the posts put on board the vessel were not of the kind called for by the contract. The only obstacle in the way of a recovery by plaintiff arises from the fact that the bill of lading consigns the cedar posts to Johnstone & Gibbons.

The learned judge before whom this cause was tried in the court below took it from the jury, on the ground that the bill of lading showed conclusively, as matter of law, that there had been no delivery of the posts to the defendants at Strachn's island.

The question of delivery is one of fact, and is mainly governed by the intention of the parties. Where the evidence is equivocal, it is properly a question of fact for the jury, under proper instructions, and must be submitted to them, unless it is plain, as matter of law, that the evidence will justify a finding but one way. *Allen v. Williams,* 12 Pick. 297; *Stanton v. Eager,* 16 Id. 473; *Stevens v. Boston & W. R. R. Co.,* 8 Gray, 262; *Moakes v. Nicholson,* 115 Eng. Com. Law, 290; *Godts v. Rose,* 84 Eng. Com. Law, 229; *Tregelles v. Sewell,* 7 Hurl. &. N. 574; Benj. Sales, § 399.

An unconditional sale of specific chattels passes the title at once, and the risk of loss is upon the purchaser, who has the right to immediate possession; but if anything remains to be done in the way of making a specific appropriation of the goods sold to the contract, the agreement is executory,

and, until such appropriation is made, the property does not pass. When, from the terms of the agreement, the vendor is to make the appropriation, and in pursuance of such agreement the property is set apart with the intention unconditionally to apply it in fulfillment of the contract, the title passes to the purchaser, and the sale is complete.

In this case the contract called for the delivery of the cedar posts, which were the subject of the sale, on the rail of the vessel by the seller. The evidence shows that he had given to the purchasers notice of his readiness to deliver; that they sent a vessel, of which one of the purchasers was owner, to receive such delivery, with an order upon the seller to deliver such posts to the master of the vessel; and that 250 cords were delivered accordingly. This evidence, standing by itself and uncontradicted, would be sufficient evidence of the appropriation of the cedar posts by the seller to the contract, and of his intention to pass the title unconditionally to the defendants.

The subsequent act of the seller, who had parted with his interest in the contract and the benefits arising therefrom, and who then was acting as agent for his assignees, in taking a bill of lading in which the goods were consigned to Johnstone & Gibbons, renders the evidence of intention equivocal as to the absolute delivery of the goods to defendants. By the contract, the purchase price was to be paid on delivery over the rail of the vessel. This was not done, and the seller had the right to retain his hold upon the goods to secure the payment of the price, although he put them in course of transportation by delivery to the carrier.

The important question in this case is, did he take the bill of lading for the purpose and with the intention of retaining his hold upon the goods to secure the purchase price, or for any other purpose? The bill of lading is evidence of such intent, and this is strengthened by the action of the consignees in asking for an advance upon the strength of it,

instead of demanding payment, to which he was entitled if there had been an absolute delivery.

But the evidence of the shipper with reference to the circumstances under which the bill of lading was made out tends strongly to repel the inference which usually attaches to a bill of lading. Here the bill of lading was not made or delivered at the request of the shipper, but at the request and under the directions of the master of the vessel; not for the purpose of retaining a right to dispose of the property, but to fix the freight as between the defendants as a firm and one of the defendants as owner of the vessel. Under the contract for the sale of the posts, neither McKay nor his assignees were to be liable for the freight. McKay, as agent, had no authority to bind Johnstone & Gibbons to the payment of the freight on posts delivered under the contract, and the evidence shows that he had no such intention. It has been held, and properly so, that a bill of lading constitutes a contract between the parties to it, and is evidence of the receipt of the goods, of their condition when received, and of the contract of carriage, and to whom they are to be delivered. It is not, however, conclusive evidence of the receipt of the goods, nor of their condition, between the owner and shipper; but, so far as it is an undertaking to transport and deliver the goods as therein stipulated, like other contracts, in the absence of fraud or mistake, its terms cannot be altered or varied by parol proof where it forms a basis or subject-matter of an action between the parties to the contract. *McMillan v. Michigan S. & N. I. R. R. Co.,* 16 Mich. 112; *Creery v. Holly,* 14 Wend. 26; *The Delaware,* 14 Wall. 579.

In this case the defendants are not parties to the written contract of transportation, and the action is not brought upon it. 1 Greenl. Ev. § 279. It was admissible evidence upon the question as to whether there was an absolute delivery over the rail of the vessel to defendants, but upon

this question it is not conclusive. *Merchants' Nat. Bank v. Bangs,* 102 Mass. 291; *Bostwick v. Baltimore & O. R. R. Co.,* 45 N. Y. 712.

In the sixth chapter of book 2 of Benjamin on Sales (§ 399), the author reviews the authorities, and from them deduces the following principles:

"1.  Where goods are delivered by the vendor in pursuance of an order to a common carrier for delivery to the buyer, the delivery to the carrier passes the property, he being the agent of the vendee to receive it, and the delivery to him being equivalent to a delivery to the vendee.

"2.  Where goods are delivered on board of a vessel to be carried, and a bill of lading is taken, the delivery by the vendor is not a delivery to the buyer, but to the captain as bailee for delivery to the person indicated by the bill of lading as the one for whom they are to be carried."

"3.  The fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve the *jus disponendi,* and to prevent the property from passing to the vendee.

"4.  The *prima facie* conclusion that the vendor reserves the *jus disponendi,* when the bill of lading is to his order, may be rebutted by proof that, in so doing, he acted as agent for the vendee, and did not intend to retain control of the property; and it is for the jury to determine, as a question of fact, what the real intention was."

The fifth and sixth principles enunciated have no application to the facts of this case, and mention of them may be omitted.

Applying these principles to the facts of this case, it is plain that, as between these parties, the question as to whether the cedar posts were delivered to the defendants at the time they were passed over the rail of the vessel, in view of the facts and what subsequently transpired, should have been submitted to the jury. If they should find from the evidence that McKay intended to make an absolute and unconditional delivery to defendants when he put the cedar posts over the rail of the vessel, and did not, by subsequent-

ly taking a bill of lading consigning them to Johnstone & Gibbons, intend to retain control of them, then the delivery so made would operate to pass the title to the cedar posts to defendants, and the plaintiff would be entitled to recover, under his count for goods sold and delivered, for the posts so delivered. If, on the other hand, McKay, acting for Johnstone & Gibbons, intended to retain in their own control and right of disposition the cedar posts, notwithstanding the delivery over the rail of the vessel, and no subsequent delivery was made, the defendants would be entitled to recover. The question of delivery, under the evidence, should have been submitted to the jury.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.