## A. L. BAKER v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Law of the Case.** Where in a suit, based on damage to goods, it is charged by the court that the title to them was not in plaintiff if they were shipped, consigned to the vendor who sent draft with bill of lading attached for collection, so that plaintiff could not obtain the property until he paid for it, a verdict should be directed for defendant when the proof shows without conflict, that that is what vendor did.

**Review of Verdict: DAMAGES.** In an action against a carrier for conversion of goods, after refusal of the consignee to take them, by selling them to a third person, where there was evidence that the goods were worth from ten dollars to twelve dollars, a verdict for six dollars will not be disturbed.

*Appeal from Woodbury District Court.*—HON. S. M. LADD, Judge.

### FRIDAY, MAY 22, 1896.

ACTION for the value of goods shipped over defendant's line of road. Judgment for the plaintiff, and the defendant appealed.—*Reversed.*

NOTE.—As to the passing of title to property by delivering it to a carrier for transportation to an assignee, or vendee, see extensive note to *Ramsey & G. Mfg. Co., v. Kelsea*, 22 L. R. A. (N. J.) 115.

*Taylor, Shull & Farnsworth* for appellant.

*Lynn & Foley* for appellee.

GRANGER, J.—I.   The case, on appeal, presents two causes of action, the first being for dates, cranberries, and cabbage shipped from Sioux City to Hawarden, in Iowa.   They were consigned to L. M. Lake, who refused to receive them, and the company sold them to third parties for two dollars.   The petition charges a conversion by the defendant.   The court instructed the jury that the plaintiff was entitled to recover the fair and reasonable value of the articles less the charges for transportation.   The value, as alleged, is ten dollars and thirty cents.   The jury allowed plaintiff six dollars.   There is, in argument, as there should be a concession that there was a conversion of the goods.   The court left it to the jury to fix the amount, and there is testimony to show that the articles were worth from ten to twelve dollars. There is no reason why we should disturb the finding of the jury, and the judgment in that particular will stand affirmed.

II.   The other cause of action is for a car-load of apples shipped from Boston, Mass., to Yankton, S. D. The apples were purchased for plaintiff by one Stickney about November 21, 1892, and shipped by the National Dispatch & Transfer Company to Chicago, and from there to Yankton by the defendant company's line of road, reaching there about December 4, 1892.   After the shipment, the plaintiff, through the defendant's agent at Sioux City, attempted to have the destination of the car changed to Sioux City, but it was not done.   The purchase in Boston was made from York & Whitney, and the shipment was made by that firm to itself at Yankton.   In making the purchase Stickney paid, on the car-load, one hundred dollars, and for the balance,—three

hundred and twenty-four dollars,—a draft was attached
to the bill of lading by York & Whitney, and sent
to a bank at Sioux City for collection. The
plaintiff resided at Sioux City, and at Yankton
there was no one to receive the apples, and after
some time, they were stored, and afterwards, in
February, 1893, shipped to Sioux City, at the request
of plaintiff. On reaching Sioux City they were found
to be of no value, and plaintiff refused to accept them.
The court, in charging the jury, stated the claims of
the parties as follows: "The plaintiff claims that
through his agent, Stickney, he purchased a car-load of
one hundred and fifty barrels of apples in Boston, and
paid one hundred dollars thereon, that the sellers,
York & Whitney, as a condition of said sale, told
plaintiff said apples were plaintiff's, and to have said
apples shipped as plaintiff might wish, and to pay
therefor when said apples reached their destination;
that Stickney, the agent of plaintiff, caused said
apples to be shipped in the name of York & Whitney,
to said York & Whitney, at Yankton, S. D., and that
said apples were so shipped and reached said Yank-
ton, and that while there, by reason of the negligence
of the defendant, they were wasted, and lost by decay.
The defendant claims that the car of apples was
shipped by York & Whitney to themselves as consignee
and that the apples were not to be delivered until the
balance due thereon was paid for; and at the time of
the injury, if any, to said apples they were the prop-
erty of York & Whitney, and not of plaintiff; and
defendant further claims that it exercised due dili-
gence in the care of said apples." The court presented
to the jury two questions: *First*, whether by the
purchase at Boston, plaintiff became the owner of the
apples, before he obtained the bill of lading, by the pay-
ment of the balance of the purchase price; and, *second*,
if he did, then whether the defendant was negligent

in caring for the apples at Yankton. In expressing the law as to what would amount to a transfer of title at Boston, so that the plaintiff would be the owner, the court said to the jury, in substance, that if there was an agreement by which the apples were plaintiff's, and there was no condition that the bill of lading was not to be delivered until the balance of purchase price was paid, they became the property of plaintiff, so that he could recover. It then stated as follows: "If, however, you find from the evidence that the plaintiff, through his agent, Stickney, purchased the apples from York & Whitney in Boston, and paid one hundred dollars thereon, and that nothing was said concerning the payment of the balance, or that it was agreed that the balance should be paid upon the delivery of the bill of lading to plaintiff, and it was arranged that the bill of lading should be made out to York & Whitney, to be turned over to plaintiff upon the payment of the balance due on the apples, then the apples would not become the property of the plaintiff until he received the bill of lading. So, too, unless you find that York & Whitney at the time of the purchase, told Stickney that the apples were his, and he had accepted them, and that he could ship them as he pleased, and the bill of lading was made out to York & Whitney as consigness at the instance of Stickney, the property did not pass to the plaintiff until he had received the bill of lading at Sioux City; and if you find under this instruction that the property did not pass to plaintiff until he received the bill of lading in Sioux City, then he did not become the owner of said property until after the injury, if any, occurred, and he could not recover the damages, if any, to said apples." These rules of law are not questioned, and in the light of them we may consider an assignment of error that the court erred in refusing to direct a verdict for the defendant,

because the plaintiff had no ownership of the property in controversy. It will be seen that it is the law of the case that, if nothing was said concerning the payment of the balance, or that it was agreed that the balance should be paid on the delivery of the bill of lading to plaintiff, and it was arranged that the bill of lading should be made out to York & Whitney, to be turned over to plaintiff upon the payment for the balance of the apples, then they would not become the property of plaintiff until he received the bill of lading. The purchase was made by Stickney, and his is the only testimony from which it can be known what the understanding at Boston was. There had been other transactions between York & Whitney and plaintiff, but they do not aid the question. Stickney, on his direct examination, makes some statements that, disconnected from his cross-examination, might leave the conclusion in doubt as to the purpose of sending the draft for collection with the bill of lading. It will be seen that the law as stated makes the absence of evidence to show an understanding that plaintiff was to have the apples, regardless of the bill of lading, fatal to plaintiff. The fact of such a right must be made to appear to overcome the legal inference from sending the draft for collection with the bill of lading. The following is the statement of Stickney on cross-examination: "The last time I was in Boston I bought these six cars of apples. Did not pay for them at that time in full; not the six cars. The car in question was one of the six. The bills of lading for the other cars were all forwarded to Mr. Baker, I expect. I had possession of the bill of lading there. I took it to York & Whitney and gave them possession of it. They sent it, with the draft, to the bank here,—the draft for the balance of the one car-load of apples. Mr. Baker couldn't get them until he paid that draft.

I don't know of any contract or arrangement between York & Whitney and myself and Mr. Baker, by which Mr. Baker could come into possession of that bill of lading without paying for the apples. There was nothing said about that, that I know of." In his direct examination there is nothing actually in conflict with these statements, when carefully considered. He had before made purchases, and paid for them, and similar shipments had been made, except as to bills of lading, which were sent directly to plaintiff. On his direct examination he says, after speaking of other shipments: "When I bought these cars I suggested to him perhaps he had better ship them to his own order, not being very well acquainted with Mr. Baker, and send the draft with the bill of lading." The witness further said on his direct examination: "I asked him if I paid him one hundred dollars for each car, if it would be all right; that he would ship the apples right through; and he said, 'Yes,' it would be all right; it didn't make any difference about that. I suggested to him, if it wasn't all right, whether it was or not, he could attach the draft to the bill of lading. He had never known Mr. Baker, except what transactions I had done with him the last four or five weeks, and he said that would be all right; and I gave him directions where to ship each car." This evidence is without practical conflict. There are general statements, seemingly so; but at all times when the thought of payment is the controlling one, there is nothing to indicate that the title was to pass before payment. There is no phase of the evidence on which there can be a recovery under the instructions, and hence the court should have directed a verdict for defendant on this branch of the case. This conclusion renders it unnecessary to consider the question of negligence, or a failure to stop the car at Sioux City. As to the latter, however, it may be said that the court

instructed the jury that there was no evidence to show that defendant ought to have so stopped the car.

The costs as to the branch of the case we affirm are but nominal, and the costs of the appeal will be taxed to appellee, and the judgment as to the claim for apples will stand REVERSED.