JOHN HAMILTON, Appellant, v. JOS. SCHLITZ BREWING COMPANY, *et al.,* Appellees.

**Motion to direct verdict:** REVIEW. In reviewing the action of the trial court in ruling on a motion to direct a verdict, the appellate court will give the aggrieved party the benefit of the most favorable construction the evidence will reasonably bear.

**Illegal sale of liquor:** PLACE OF SALE: DIRECTION OF VERDICT: EVIDENCE. The fact that a foreign vendor of liquor consigned the same in the name of its local agent, who indorsed the bill of lading and forwarded the same with a draft, which indicated that delivery of the goods to a purchaser in this State was not to be made until the purchase price was paid, did not as a matter of law show a sale in this State, but under the evidence, the intention of the parties as to the time and place of a completed sale and transfer of the goods was one of fact.

**Recovery of payments.** A recovery of money paid for the purchase of liquor, is limited by the statute to payments on illegal sales made in this State.

**Evidence:** STATEMENTS OF AGENT. Where the arrangement of an agent for the transaction of business was ratified by his principal, his conversations with the other party to the agreement are admissible in evidence for the purpose of showing the agreement, irrespective of his previous authority to make the same.

**Evidence:** CONCLUSION OF WITNESS. The testimony of an agent as to the intention of his principal in consigning goods in his own name and forwarding the bill of lading with a draft attached for collection, is a conclusion and inadmissible.

*Appeal from Linn District Court.*— HON. W. N. TREICHLER, Judge.

THURSDAY, DECEMBER 14, 1905.

ACTION under the statute of this state to recover moneys paid by plaintiff to the defendant Jos. Schlitz Brewing Company as the purchase price of intoxicating liquors, sold, as alleged, by said company to plaintiff in this state,

contrary to the laws thereof. There was a jury trial, resulting in a verdict and judgment in favor of defendants. The plaintiff appeals.— *Reversed.*

*Rickel, Crocker & Tourtellot* and *John A. Reed,* for appellant.

*Hubbard, Dawley & Wheeler* and *Miller, Noyes, Miller & Wahl,* for appellees.

BISHOP, J.— The statute provision upon which this action is based is a part of the general chapter of the Code prohibiting the traffic in intoxicating liquor in this state on the part of all persons save those holding a permit, or coming within the provisions of the mulct law, so called, and such provision reads as follows: ."All payments or compensation for intoxicating liquor sold in violation of this chapter, . . . shall be held to have been received in violation of law, and to have been received upon a valid promise and agreement of the receiver to pay on demand to the person furnishing such consideration, the amount of said money," etc.  Code, sec. 2423.

The averments of the petition are that between June 30, 1898, and May 11, 1899, the defendant company, a corporation of the state of Wisconsin, and residing in said state, sold and delivered to plaintiff, at Cedar Rapids, this state, intoxicating liquor, to wit, beer in barrels, kegs, and bottles, for which plaintiff paid to defendant the aggregate sum of $5,139.35; that all such beer was sold to plaintiff by defendant without right and in violation of the intoxicating liquor laws of this state. Judgment is demanded accordingly for said sum.

The defendant by its answer admits that between the dates as claimed in the petition it sold beer to the plaintiff, and admits that plaintiff has paid to it on account of such sales, the sum in the aggregate for which judgment

is now by him demanded. The defendant denies, however, that said sales and delivery of beer, or any thereof, were made at Cedar Rapids, or in violation of the laws of this state, and alleges that on the contrary all such sales were made and consummated in the state of Wisconsin upon a valid promise and agreement for payment upon contracts legally made in said state of Wisconsin; that all the moneys received by it from plaintiff were paid under said contracts, and were paid and received without violation of law.

Such was the sole issue tendered and upon which the case was tried in the court below. From this, and passing for the moment questions arising out of the conduct of the trial, it becomes apparent that the principal question for our determination is whether the sales of beer upon which the action is primarily bottomed, were made in this state. And particularly does this follow because it is conceded by counsel for appellee in argument that, if so made, they were in violation of the law, and plaintiff may recover as sought in this action. Appellant not only insists that the sales were made in this state, but asserts that if the facts were as contended for by appellee, the taint of illegality attached, so as to support a recovery as prayed in this action. The question arises first upon exception to the ruling of the trial court denying the motion of plaintiff for an instructed verdict in his favor made at the close of all the evidence in the case, and again upon exception to the ruling of the court refusing to set aside the verdict of the jury and to grant a new trial.

I. The motion for an instructed verdict challenged the right of defendant in any event, and as a matter of law, to have a verdict in its favor. In considering this

1. MOTION TO DIRECT VERDICT: review. branch of the case we need not stop to pass judgment upon the many assignments of error based upon rulings had in connection with the introduction of the evidence. For the purposes of a motion to direct a verdict, such rulings must be regarded as

law of the case.   In taking up the ruling upon this motion
for review, we are required to give to defendant the benefit
of the most favorable construction the evidence as a whole
will reasonably bear.    *Guest v. Burlington, etc., Co.,* 74
Iowa, 457.

Stated briefly as may be, these facts are disclosed by
the record:   In September, 1897, the plaintiff, residing in
Cedar Rapids, this state, and engaged in the business of
dealing in intoxicating liquors under the mulct
law, so called, of this state, entered into an
agreement in writing with the defendant, in
which it is recited that defendant has consented to erect
certain buildings and equipments in the city of Cedar Rap-
ids, of which plaintiff is to be intrusted with the care and
management, etc.    It is then    provided that    plaintiff
"agrees to buy, for and during the next ten years, all the
beer needed and used in his business, from said Jos. Schlitz
Brewing Co.,   .   .   .   and in   conformity to the by-
laws, rules and regulations printed on the back thereof.
.   .   .   This agreement shall be in force for ten years
from the day the same is countersigned at Milwaukee, but
the Brewing Co. reserves the right to terminate the same
at any time." etc.    Across the margin of the writing was
the following:   " Not valid until countersigned and sealed
at the general office in Milwaukee, Wis."    On the back of
the writing was this, among other things:   " The atten-
tion of all parties dealing with the Jos. Schlitz Brewing Co.
is called to the following by-laws, rules and regulations:
*Authority of agents.*    No one can bind this company or
contract any debt in its behalf, unless a general officer
of the company, or specially authorized by resolution of the
board of directors.    *Sale and delivery.*    No order or agree-
ment for the purchase of beer will be considered as bind-
ing upon this company until received and accepted at the
general office in Milwaukee.    All shipments will be made
from Milwaukee, and are at the risk of the purchaser from

2. ILLEGAL SALE
OF LIQUOR:
place of sale:
direction of
verdict: evi-
dence.

the moment when delivery is made to a regular common carrier." The agreement was signed on its face by plaintiff, and by a special agent of the brewing company; and this also appears: " Countersigned, sealed and delivered at Milwaukee, Sept. 1, 1897. [Signed] Jos. Schlitz Brewing Co."

On September 5, 1897, a supplementary agreement was entered into between the same parties, in substance that plaintiff " agrees to purchase and handle exclusively, on the terms printed on the back thereof, the beer of the Jos. Schlitz Brewing Company during the period from Sept. 1, 1897, until otherwise changed, at the following prices, etc., and to pay for the same in the following manner: Terms 30 days, with credit limit of four cars. All payments to be made at the office of the said Brewing Company in the city of Milwaukee, Wisconsin." This agreement was indorsed on the face margin and bore the same matter upon the back as the former agreement above set out, and was executed in the same manner as the former agreement. Thereafter orders were sent by plaintiff from Cedar Rapids by mail or wire to defendant at Milwaukee, and the latter delivered beer in accordance with each order to a carrier at Milwaukee, charged the goods to plaintiff on its books of account, and mailed to him an invoice of the shipment.

None of the shipments made prior to June 28, 1898, or payments made on account thereof, are drawn in question in this case, in the sense that any recovery is asked on account thereof. It appears, however, from the correspondence between the parties, that the brewing company professed considerable annoyance on account of plaintiff failing to keep within the credit limit prescribed by the agreement, and by failing to make remittances when due; and it followed that acceptance of orders were frequently delayed until payments as demanded had been made. It does not appear, however, that defendant at any time made declaration of its purpose to terminate the relations under the agreement, nor did

plaintiff in any way suggest a desire upon his part that the relationship be brought to an end. His concern seems to have been confined solely to an extension of his credit limit. On June 23, 1898, plaintiff wired defendant: " Am having financial difficulty. Will advise fully by mail." And two days later he wrote defendant, rehearsing his financial troubles, and stating in substance that his lack of capital would not permit him to continue present arrangements, unless accorded an extension of his line of credit. He speaks of having given one Stewart, standing in the relation to him of a surety, a bill of sale to protect him, and to avoid proceedings on the part of other creditors. This statement is then made: " We do not want to quit the business and will not do so unless this arrangement of extra capital be an absolute impossibility." The letter closes thus: " Kindly let us know if this thing can be arranged, and, if so, in what shape it will be? "

Defendant did not reply to the letter, but on June 27th it sent a traveling agent, one Schmidt, to Cedar Rapids. On that day, and as one result, at least, of the visit, Schmidt wired the brewing company as follows: " If possible to-day bill of lading attached Hamilton five barrels, eighty halves," etc. In response to this the defendant placed on board car at Milwaukee the quantity of beer as called for in the telegram, and took the bill of lading in the name of Paul Bodenback, Cedar Rapids, Iowa, with notation, " Notify J. Hamilton." The bill of lading was at once indorsed in blank by Bodenback, who, it appears, was manager of the defendant company and in charge of its office at Milwaukee; and with draft for the purchase price of the shipment the bill was then sent to a bank at Cedar Rapids. The beer was at once charged to plaintiff on defendant's books, and a letter advising of the shipment, with invoice and notice of the draft was mailed to plaintiff. Plaintiff paid the draft at the bank, took up the bill of lading, and upon presentation thereof received the beer from the car-

rier.    Thereafter plaintiff sent to defendant at Milwaukee, orders by mail or wire, and there was shipped to him on different dates ending May 11, 1899, eleven other car loads of beer, each shipment being made under like circumstances and in the same way as the shipment of June 28th.    The freight on each shipment was paid by plaintiff at the time the beer was turned over to him by the carrier.    It may be added that the evidence leaves no room to doubt that plaintiff consented to, even if he did not inspire, the telegram sent to Milwaukee by Schmidt.    And it appears that in the next order sent in by him, and possibly to the same effect in others, he says;. " You may ship to your own order with bill of lading to the bank as before."    That by the Schmidt telegram it was meant that the shipment, if made, should be subject to payment of the purchase price before being released by the carrier, is not questioned.

The precise contention of counsel for appellant is that the effect of the situation as made by the sending of the Schmidt telegram was to abrogate the initial agreement and to inaugurate a wholly new system of dealing; that under the circumstances thereof the shipments made were of the goods of defendant, and in legal effect were no more than shipments C. O. D. (collect on delivery), and hence that the *locus* of all such sales was in this state.

Now, as between vendor and vendee — and we have no other relationship to consider here — a contract of sale takes place when and where as may be agreed upon between the parties.    And in every case the question is one of intention.    That such is the general rule all the books are agreed.    *Clark v. Shannon,* 117 Iowa, 645; *Bank v. Reno,* 73 Iowa, 145; *Welch v. Spies,* 103 Iowa, 389.

The contract of sale involves no more than a transfer of the title to the property which is the subject thereof. And the contract is said to be complete when the seller parts with all further control over the title.    As the contract has to do with the title alone, it follows that a deliv-

ery, either actual or constructive, is not essential thereto. Delivery, however, may be important to be considered in some cases, as, for instance, where such is adopted by the seller as the method of expressing his consent to sell.   Thus, where an order for goods is communicated by mail, being the equivalent of an offer to buy, some affirmative act on the part of the seller is, of course, necessary to a contract, and such may consist simply of a delivery of the goods ordered to a common carrier, to be transported to the proposing purchaser.   In such cases delivery inheres in the contract to the extent that it serves to evidence an acceptance of the proposition to buy.   And the authorities are agreed generally that in such cases the intention of the parties is manifest, and that the sale is complete from the moment delivery is made to the carrier.  Wind v. Iler, 93 Iowa, 316; Benjamin on Sales, sec. 693; 24 Am. & Eng. Ency. Law, 1071.   From what we have said it follows that the fact that the seller retains the property under his control is not at all inconsistent with a transfer of the title thereto. He may so retain to accommodate some purpose of the vendee, or he may do so on his own account as security for the payment of the purchase price. In the latter case, he holds the property as bailee for the purchaser, with a lien thereon for the purchase price due him.   Clark v. Shannon, supra.

Now, it will be observed that the initial agreement between these parties was not of a contract of sale. It amounted to no more than an agreement looking to and intended to govern future sales.   And we are not prepared to agree with counsel that the record shows conclusively an intention to abandon such initial agreement.   Quite to the contrary, there is warrant for the conclusion that, within the specific purpose of the parties, the agreement relationship was to continue, modified only in respect of the matter of credit and terms of payment; in other words, that plaintiff consented to continue his purchases, and defendant consented to make the shipments, on the modified basis

that payment was to precede possession in fact. Such conclusion has strong support in the fact that no other change was at any time suggested or took place. Defendant continued to accept orders and to keep its account with plaintiff as before, and the latter not only continued in the possession and use of the property furnished to him by defendant under the initial agreement, but called for, apparently as matter of right, and was given the use of other items of property conceived by him to be necessary for his business use. Moreover, it was well known that the defendant had no right to make sales of liquor in this state; and especially, to support an action of this kind, it will not be presumed that parties have proceeded by deliberate intention, the one to enter upon a series of transactions each one involving an act made criminal under the laws of this state, and the other to connive therein, in the sense, at least, of making the guilty transactions possible. Accordingly we think such agreement, and the condition of affairs that had grown up thereunder, proper matters to be taken into account in reaching a conclusion upon the question as now made in the case.

We come, then, to consider in what way and how far the situation must be regarded as controlled by the manner in which the subsequent dealings were carried on between the parties. And here it is to be observed that to establish the *locus* of the sales as in this state the appellant relies upon the primary fact that the bills of lading were taken in the name of Bodenback, and secondarily upon the fact that in the case of each shipment payment of the draft accompanying the bill was made a condition precedent to the release of the goods. To begin with, it is to be said that a bill of lading does not stand for the contract as between vendor and vendee; on the contrary, it is a receipt given by the carrier for the goods, coupled with an agreement for their carriage according to the terms in the bill expressed. 6 Cyc. page 424.

But, while this is true, it is sometimes material to consider the bill, and the terms thereof, in arriving at a conclusion as to the contract relation of the parties, and particularly where, as in this case, questions of time and place are of controlling importance.    Thus, in a case presenting a simple order for goods, responded to by a shipment of such goods with bill of lading taken in the name of the shipper or some third person of his selection, and the transaction is not otherwise explained, it has frequently been held that title does not pass until there is manual delivery of the goods to the proposing purchaser.    And this is so because out of such transaction there arises a presumption that the shipper intends to retain the *jus disponendi* of the goods. Up to the point of delivery there has been no more than a qualified acceptance of the offer to buy, and hence delivery became essential to a completed contract.    Among such cases are the following:    *Forcheimer v. Stewart,* 65 Iowa, 593; *Ayres v. Dorsey Co.,* 101 Iowa, 141; *Bank v. Milling Co.,* 103 Iowa, 518; *Brown v. Wieland,* 116 Iowa, 711.

In the Forcheimer Case it appeared that the defendant was a merchant doing business in this state, and plaintiff a merchant doing business in the state of Alabama.    Plaintiff ordered of defendant a quantity of hams, and the latter, upon making shipment, took the bill of lading in his own name.    Upon receiving the bill, he indorsed the same in blank, and, having attached thereto a sight draft for the purchase price of the hams, he delivered the same to his banker, and, according to a custom of doing business, received credit for the amount of the draft in his bank account.    It was held that title did not pass to plaintiff until the bill of lading was surrendered to him, and the holding was put upon the ground that defendant, by taking the bill in his own name, had not only retained the right to make disposition of the goods, but that he had done so with an apparent object, and had carried that object into effect by transferring the bill, and hence the goods, to the

bank. It is the evident thought of the opinion that, under such circumstances, there could be no room for saying that a completed contract .of sale to plaintiff had taken place. In Brown v. Wieland, it appears that plaintiff, having received an order for goods, made shipment, taking the bill of lading in his own name. The bill was sent to a third party, with directions as to a settlement for the purchase price. Defendant, upon being advised of the terms, refused to accede thereto, and it would seem that one of the reasons therefor was that he had revoked his order for the goods. After the goods had arrived at their destination, and as a result of negotiations, new terms were agreed upon and the bill of lading was then delivered. In view of such circumstances, it was held that plaintiff, the shipper, did not part with his title to the goods until after the new terms of sale had been agreed upon, under which the bill was delivered. The doctrine of the cases (and many others might be cited to the same effect) is thus stated by Mr. Benjamin: " The fact of making the bill of lading deliverable to the order of the vendor is, when not rebutted by evidence to the contrary, almost decisive to show his intention to reserve *jus disponendi* and to prevent the property from passing to the vendee." Benjamin on Sales (1888) page 339.

As already stated, however, the question, in its last analysis, is one of intention; and " the *prima facie* conclusion that the vendor reserves the *jus disponendi,* when the bill of lading is to his order, may be rebutted by proof that in so doing he acted as agent for the vendee, and did not intend to retain control of the property, and it is for the jury to determine as a question of fact what the real intention was." Benjamin on Sales, page 333; 1 Mechem on Sales, page 501; *Brown v. Wieland, supra; Emery v. Bank;* 25 Ohio St. 360, (18 Am. Rep. 299); *Straus v. Wessel,* 30 Ohio St. 211; *Gibbons v. Robinson,* 63 Mich. 146, (29 N. W. Rep. 533); *Downs v. Bank,* 91 U. S., 618, (23 L. Ed. 214); *Hobart v. Littlefield,* 13 R. I. 341; *Bank*

*v. Bangs,* 102 Mass. 291; *Wigton v. Bowley,* 130 Mass. 252; *Osborn v. Lumber Co.,* 91 Wis. 526, (65 N. W. Rep. 184); *Brown v. Hare,* 4 H. & N. 821; *Stock v. Inglis,* Law Rep. 10 App. Cas. 263.

In effect it was the holding in Brown v. Wieland that the whole transaction should be inquired into to determine the intention of the parties. " The mere fact of taking the bill of lading in plaintiff's [the shipper's] name might not in itself be controlling." The doctrine of the cases is well expressed in Bank v. Bangs. After declaring the question to be one of intention the opinion proceeds: " If the bill of lading  .    .    .   be taken in the name of the consignee, or be transferred to him by indorsement, the strongest proof is afforded of an intention to transfer an absolute title to the vendee." This language is quoted with approval in Forcheimer v. Stewart, *supra.* In legal contemplation there can be no difference in effect between a bill of lading taken in the name of the consignee, and one taken in the name of another and indorsed to him or indorsed in blank.  Either would be equally available to him.  And all the cases agree that the fact that the shipper retains a lien upon the goods, as by attaching a draft to the bill and sending the same to a bank for collection, cannot be accepted as controlling upon the question of when the title passed. The case of *Baker v. Railway,* 98 Iowa, 438, principally relied upon by appellant, is of no value as an authority. That case was submitted to the jury in the trial court upon the theory that, certain facts being found, a delivery of the property did not take place until the bill of lading came into the hands of the consignee.  On the submission in this court, the rule of law as adopted by the court below was not questioned, and without discussion such rule was accepted as the law of the case.

But, as we have seen, counsel for appellant say that, under the circumstances thereof, the transactions in question amounted to no more than C. O. D. shipments — the argu-

ment being that there can be no difference in legal effect between a shipment where delivery of the goods is made conditional upon payment of a draft for the purchase price attached to the bill of lading indorsed in blank, and one where delivery is made conditional upon payment of the purchase price to the carrier; that the difference consists only in the choice of the instrumentality employed to make the collection. Proceeding from this, it is contended that in all such cases the law conclusively presumes that within the intention of the parties title does not pass until delivery in fact is accomplished.

In support of this counsel rely upon *State v. U. S. Express Co.,* 70 Iowa, 271, and *State v. Am. Express Co.,* 118 Iowa, 447. The former case was one for the condemnation of intoxicating liquor brought into the state by the express company under a C. O. D. shipment and seized while in its hands. The company appeared as a claimant. What were the contract relations between vendor and vendee was not made to appear, beyond what was disclosed by the shipment itself. In a brief opinion, and without reference to any authority, it was decided that the liquor was held for sale in this state; that the company was acting as the agent of the consignor merely to complete the sale. Accordingly the liquor was ordered condemned. The later case against the American Express Company was also one for the condemnation of intoxicating liquor. The goods were ordered by mail from a dealer in the state of Illinois, and were brought into this state under C. O. D. shipment. In a *per curiam* opinion we adhered to the conclusion reached in the former case; the decision being put upon the ground of *stare decisis.* In the case thus last referred to the defendant company pleaded an interference with interstate commerce, and the case went on error to the Supreme Court of the United States, where the judgment of this court was reversed; the opinion being reported in 25 Sup. Ct. 182, 49 L. Ed. 417. That court expresses the view

that under the facts there was a completed sale in the state of Illinois, the place of shipment, and it was held that the case was within the operation of the commerce clause of the Constitution.    And we may confess that the great weight of authority is against the doctrine as expressed in our cases as to the effect of a C. O. D. shipment strictly considered.    But we are not disposed to regard the sales here in question as within the rule of our former cases governing C. O. D. transactions.    Those cases, and others holding to the same doctrine, are bottomed upon the thought that, in the case of a C. O. D. shipment arising upon a simple order for goods, and the transaction not being otherwise explained, the intention on the part of the seller to retain the *jus disponendi* of the goods is manifest; that there has been no more than a qualified acceptance of the offer to buy, and accordingly the carrier is to be regarded as the agent of the seller to make delivery upon payment of the purchase price and thus complete the sale.

Now, we have not before us the case of a simple order for goods which is responded to by a C. O. D. shipment. A ruling favorable to plaintiff upon the motion to direct a verdict would have necessitated an acceptance of the theory that nothing more was involved than C. O. D. shipments, and this would have been to disregard, wholly and arbitrarily, all the other facts and circumstances appearing in evidence and having a bearing upon the question of the intention of the parties.    It is true enough that here, as well as in the case of a C. O. D. transaction, the buyer could not obtain possession of the goods until he had paid the purchase price; but, as we have seen, such fact is not conclusive in the presence of other explanatory facts tending to prove a contract concluded previous to the fact of delivery.    And if there be warrant for a finding that a completed contract in fact preceded the matter of delivery, it would follow as a matter of course that the circumstances of the delivery, whether by C. O. D. shipment or by bill of

lading with draft attached, would become wholly immaterial.

The contention of appellant for liability on the part of defendant in this action, even though the sales of beer in question were made in Wisconsin, deserves no more than passing notice. The action could not be but for the statute, and the statute limits the right of action to those cases only where intoxicating liquor is "sold in violation of this chapter." Sales made in Wisconsin must be judged by the law of the place where made, and could not be construed as violative of the laws of this state. Moreover, it was proven on behalf of the defendant that sales made as were these are authorized by the laws of Wisconsin. Taking, then, into consideration all the circumstances of the case, including the positive agreement as entered into between the parties, the fact that sales by defendant within this state were known to be unlawful, and the character of the shipments made, and assuming that the record is otherwise free from error, we cannot say that the question of *locus* of the sales as governed by the intention of the parties should not have gone to the jury under proper instructions for a verdict.

II. We come now to a consideration of the matters arising upon or inhering in the conduct of the trial, and which are brought forward for review by the motion for a new trial. When it is considered that 207 different contentions for error are presented, it will at once become manifest that we cannot enter upon a discussion of each thereof. Indeed, we assume that such is neither necessary or expected of us.

Two matters, however, are important to be considered, and, as we think, involve prejudicial error. Plaintiff sought to prove by his own testimony the transactions and conversations between himself and Schmidt at the time of the visit of the latter to Cedar Rapids. This was objected to by defendant, on the ground that it had not been shown that Schmidt had any authority

*3. Recovery of payments.*

*4. Evidence: statements of agent.*

beyond that of soliciting orders to be sent to Milwaukee for approval or rejection, and the objection was sustained. Under other circumstances the objection may have been good, but, we think, not necessarily so, in view of the situation of the parties, and the question at issue. It will be remembered that affairs had reached a point where the relations between the parties were likely to terminate because of the alleged inability of plaintiff to comply in all respects with the existing agreement. Defendant was dissatisfied with the course of conduct on the part of plaintiff, and the latter was soliciting a new or modified arrangement. Now, a change in the method of doing business did take place, and it followed at once upon the visit of Schmidt. Without reference, therefore, to the measure of authority previously given him, if, as contended for by appellant, he assumed to agree to a new arrangement for transacting business, and the defendant ratified the same, either expressly or by acting upon it with knowledge, what that arrangement was would have a very material bearing upon the question of the intention of the parties in what was subsequently done, and hence important in reaching a right conclusion upon the ultimate and vital question in the case.

The further matter has relation to the testimony of Bodenback, the manager of the defendant at Milwaukee. He was asked by counsel for defendant as to the intention of 5. EVIDENCE: conclusion of witness. defendant in taking the bills of lading in his name and forwarding them, indorsed, with draft attached, to the bank at Cedar Rapids, and was allowed to answer. The objection should have been sustained. The question called for a conclusion of the witness, and not for the facts.

We have examined the record with respect to the other errors assigned. As to most of them, it is not likely that they will again arise upon a retrial of the case. Others do not demand special treatment at this time. For the errors pointed out as occurring in the introduction of the evi-

dence, there must be a new trial, and the case will be remanded for that purpose.

*Reversed.*