JAMES R. MORELAND v. NEWBERGER COTTON COMPANY.

[48 South. 187.]

1. STATUTE OF FRAUDS. *Code* 1906, § 4779. *Parol sale of chattels. Delivery of part. Payment.*

Where, under an oral contract for the sale of cotton for a price exceeding fifty dollars, the purchaser actually received and paid for a part thereof, the case is not within Code 1906, § 4779, providing that a parol contract for the sale of personalty, for the price of fifty dollars or upwards, shall not be allowed to be valid unless the buyer shall receive the same or a part thereof, or shall actually pay or secure the purchase money or a part thereof.

2. SALES. *Delivery. Question for jury.*

Where the question of a delivery of chattels under an agreement to sell is material and, from the facts of the case although shown by undisputed testimony, different conclusions touching it could reasonably be drawn, the case is one for a jury and a peremptory instruction should be denied.

3. SAME. *Trial. Reopening case. Discretion of the court.*

Where, in an action for the price of chattels, defendant's case rested upon the existence of an alleged custom, plaintiff should be permitted to reopen his case, after having rested and a per-

emptory instruction had been requested by defendant, and to show the non-existence of such custom, if he could; and an abuse f judicial discretion in this regard will be reversible error.

FROM the circuit court of Leflore county.

HON. SYDNEY SMITH, Judge.

Moreland, appellant, assignee of Moreland & Townes, a dissolved copartnership, was plaintiff in the court below; the Newberger Cotton Company, appellee, was defendant there. From a judgment in defendant's favor plaintiff appealed to the supreme court.

The facts are stated in the opinion of the court.

*McClurg, Gardner & Whittington,* for appellant.

While the contract for sale of the cotton was oral, yet the purchaser actually received and paid a part thereof. Hence the statute of frauds does not apply. *Stonwall Mfg. Co. v. Peek,* 63 Miss. 342.

At any moment after the closing of the trade on the afternoon of October 21, 1903, the appellee had a legal right to have sold the cotton there on the grounds or to have shipped it to Memphis or New Orleans or other cotton center; and the sellers, Moreland and Townes, could not have prevented it. *Ingersoll v. Kendall,* 13 Smed. & M. 611; *Jordan v. Harris,* 31 Miss. 257; *Garland v. Stewart,* 13 Smed. & M. 314.

As regards the question of admissibility of evidence to show custom in method of sales, we refer to the recently decided case of *Postal Telegraph, etc., Co. v. Willis,* 93 Miss. 540, 47 South. 380, showing that the court below erred in admitting the testimony on that subject over the timely objection of appellants. If there had been no other errors committed during the trial, this would be amply sufficient to reverse the judgment, even if the court below had permitted the case to go to the jury and there had been a verdict against the appellant. It is accordingly doubly erroneous for the trial court to have taken from the jury, as it did, the issue and grant the peremptory instruc-

tion against appellant when there was a conflict in the evidence as to the terms and character of the sale. This appellate court can hardly escape the conviction, on examining the evidence, that the peremptory instruction in favor of appellee was erroneously bottomed on the proof of "custom."

The court below should have permitted the appellant, plaintiff below, to reopen the case and introduce evidence to meet the evidence of appellee, defendant below, on the issue of existence or non-existence of custom. The discretion of the court below was improperly exercised in refusing to permit appellant to do so. *Merchants' Nat. Bank v. Bangs,* 102 Mass. 291.

Whether there was delivery of the cotton sold was essentially a question of fact to be determined by the jury.

*Mayes & Longstreet,* on the same side.

As stated by our associates, the case of *Stonewall Mfg. Co. v. Peek,* 63 Miss. 342, disposes of any question as to validity of sale under the statute of frauds.

The more serious question here is, whether under the facts the title to the twenty-eight bales of cotton vested in the Newberger Company or whether it remained in the firm of Moreland & Townes; and whether the risk was in the one or the others after the evening of October 21, 1903.

The evidence shows in our opinion a completed agreement which, under the rule expounded by the decisions on this subject, shifted the title into the Newberger Cotton Company and placed the risk of destruction upon the company. It is apparent that all things had been done by the sellers necessary to identify and segregate the goods sold, whereby as incidents to such identification and segregation the quality had been fixed and price determined. The cotton was baled, marked, selected, samples had been taken away by McGarrity, prices had been determined upon, and McGarrity had announced that the cotton was bought, and had sent a telegram to appellee, announcing the purchase

of the bales, their numbers, price and quality. On the trial however the Newberger Cotton Company tried to get out of liability by showing that it was customary for the sellers of cotton to haul the cotton to the railroad depot, and in regard to cotton which appellee bought, that McGarrity habitually made draft upon the company in favor of the sellers for the purchase price and gave the draft to the sellers attached to railroad bill of lading covering the cotton.

It will be observed that this evidence is not at all inconsistent with the idea of a closed trade on the evening of October 21. The hauling of the cotton from the various places where the bales were when bought by the company was done by the sellers not as a part of the segregation or identification of the property sold but as gratuitous bailment. Comparing a large transaction with a small one, it was very much as if a citizen of a village had gone to his grocer's store and bought a lot of goods. which he then selected, accepted and directed to be charged to his account either expressly or by implication, and then left the goods in the store to be sent home by delivery wagon, which delivery the storekeeper agreed to perform.

Under the circumstances, instead of a peremptory instruction being necessary in favor of appellee, the court below should have awarded peremptory instruction in favor of appellant. But if we are mistaken in this, we yet insist that if appellant were not entitled to a peremptory instruction, then neither was appellee; and the court erred in its rulings. *McKay v. Hamblin,* 40 Miss. 474; *Smith v. Sparkman,* 55 Miss. 647; *Baker v. McDonald,* 1 L. R. A. (N. S.) 474; *Arkansas Valley Co. v. Mann,* 130 U. S. 69; *Briggs v. United States,* 140 U. S. 346; *Orr Shoe Co. v. Needles,* 67 Fed. 994; *Laughlin v. Marston,* 78 Wis. 670, 47 N. W. 1058; *Haxall v. Willis,* 15 Grat. 434; *Dyer v. Libby,* 61 Me. 45.

*Gwin & Mounger,* for appellee.

The peremptory instruction by the court below was properly given, because (1) the verbal contract of sale between McGar-

rity and Moreland & Townes was invalid under the statute of frauds as to the cotton which was burned; and (2) because there was no delivery of cotton to the Newberger Cotton Company by Moreland & Townes sufficient to pass title so as to place the risk of loss upon the Newberger Cotton Company.

It is undeniable that the contract between McGarrity, agent of the cotton company, and Moreland & Townes was a verbal executory contract, and accordingly invalid under the statute of frauds. The telegram submitted to Moreland by McGarrity and afterward sent to the Newberger Cotton Company by McGarrity was insufficient as a memorandum of sale under the statute because it does not show the seller. *Grafton v. Cummings,* 99 U. S. 100, 25 L. Ed. 366; *Frank v. Eltringham,* 65 Miss. 381; *Rector v. Sauer,* 69 Miss. 235.

The receipt of and payment for the several deliveries comprising such of the cotton as was not burned, occurring after knowledge by the parties concerned as to the destruction of the twenty-eight bales were, in view of the custom and general course of dealings between the parties, obviously for receipt of and in payment for those specific bales so delivered; and not made with intent to receive or pay for the same as being a part of an inseparable whole. Payment for the other bales did not make the company liable to pay for the twenty-eight bales undelivered and burned.

The case of *Stonewall Mfg. Co. v. Peek,* 63 Miss. 342, cited by appellants, involved no question of the destruction of any part of the commodity. But in the case at bar, apart from the fact that the intention of the parties is shown by their course of dealings to have been to receive only the specific cotton delivered in the several lots, the twenty-eight bales now in controversy had been, to the knowledge of all parties at the time of the receipt of the remainder, destroyed by fire and performance of the contract in full rendered impossible. Under the circumstances, where a part of the property has been destroyed, the rule is different from that laid down in *Stonewall*

*Mfg. Co. v. Peek.* See Brown on Stat. Frauds, § 334; *Atherton v. Newhall,* (Mass.) 25 Am. Rep. 47; Benjamin on Sales, § 706; *Hinchman v. Lincoln,* 124 U. S. 38.

The words whereby McGarrity agreed to take the cotton and Moreland & Townes agreed to sell it were wholly insufficient in law to pass title. *Shindler v. Houston,* 49 Am. Dec. 316, 334; 29 Am. & Eng. Ency. Law (2d ed.), 981.

But even if the contract should be held valid under the statute of frauds, there was no such delivery of the twenty-eight bales, prior to their destruction, as to vest title in the Newberger Cotton Compnay, and the risk of loss was still upon the sellers when the bales were burned. The facts are undisputed, and accordingly it was within the province of the court and not of the jury to determine whether the facts showed a valid transfer. *Baldwin v. McKay,* 41 Miss. 358; *Hinchman v. Lincoln,* 124 U. S. 38; *Lilienthal v. United States,* 97 U. S. 237; 24 Am. & Eng. Ency. Law (2d ed.), 1048.

There remained several things to be done before title or right of possession should be transferred, and so long as there yet remained anything to be performed the risk of loss remained in the sellers. *Williams v. Sayers,* 79 Miss. 50, 29 South, 995; *Hart v. Foundry Co.,* 72 Miss. 829, 17 South. 769; *Cole v. Bryant,* 73 Miss. 297, 18 South. 665. *Blackwood v. Cudahy Packing Co.,* 9 Am. St. Rep. 199.

The title to be the cotton, at the time of the fire which destroyed the twenty-eight bales, had never passed from McLemore to Moreland & Townes; hence Moreland & Townes could not legally sell it or deliver it to the Newberger Cotton Company. The contract between McLemore and Moreland & Townes was made some ten days or two weeks before the time fixed for the delivery by McLemore to Moreland & Townes; and at the time of making of such contract the cotton had, to a great extent, still to be ginned and put into condition for delivery; payment for the cotton was a condition precedent to its delivery, and before payment should be made, and therefore

before delivery by McLemore could be made, it was necessary that the weights of the bales should be gone over carefully and ascertained definitely. There was absolutely nothing done between or by McLemore and Moreland & Townes, before the fire, which changed the status of ownership of the cotton from McLemore to Moreland & Townes. Hence it is apparent that the Newberger Cotton Company cannot be chargeable, by purchase from Moreland & Townes, with the ownership at time of the fire. *Ramsey v. Brown,* 77 Miss. 124, 25 South. 151; *Powell v. Russell,* 88 Miss. 549, 41 South. 5; Benjamin on Sales, § 168.

FLETCHER, J., delivered the opinion of the court.

. P. P. McLemore, a planter and ginner of Leflore county, was indebted to Moreland & Townes, a mercantile partnership located at Phillipp, and at the beginning of the ginning season of 1903 entered into a written contract with Moreland & Townes by which it was agreed that McLemore should sell and deliver to Moreland & Townes sixty-two bales of cotton at an agreed price of eleven cents per pound, the gin weights to control, delivery to be made on McLemore's yard, and payment to be made after delivery and examination of the weights, as shown by the ginner's books. On October 21, 1903, one McGarrity, a cotton buyer in the employ of the Newberger Cotton Company, appellee here, came to Phillipp and entered into negotiation with Moreland & Townes looking toward the purchase for his principal of whatever cotton Moreland & Townes might have on hand. McGarrity examined and sampled the cotton which was at Phillipp, amounting to eighty-eight bales, and agreed to give eleven and three-eighths cents per pound for the cotton. Upon being informed by Moreland & Townes that they had some sixty-two bales at McLemore's gin, McGarrity and Townes, one of the partners, went to this gin, and these sixty-two bales were examined and sampled. McLemore was present at the gin, and knew that a sale was being negotiated of the

cotton covered by his written contract with Moreland & Townes. McGarrity, being satisfied with his examination, agreed with Moreland & Townes to take the entire one hundred and fifty bales, including the sixty-two bales at the gin, at an agreed price of eleven and three-eighths cents, and so advised the Newberger Cotton Company by wire; the cipher telegram, when translated, reading:

"We have bought 150 B/C, 25 B/C 1⅛ staple to 1–3/16, nothing below 1⅛ inch, balance 1–3/16 staple, nothing below 1–3/16 inch staple; all strict middling to good middling and good middling to strict midling, at 11⅜ cents, mostly good to strict good middling."

Nothing whatever seems to have been said by either party as to how the cotton should be delivered to the railroad company for transportation or how payment should be made; these details being evidently understood between the parties. Of the cotton at the gin twenty-eight bales were destroyed by fire on the night of October 22. The rest of the one hundred and fifty bales were by Moreland & Townes delivered to the railroad company, consigned to the Newberger Cotton Company, and bills of lading taken therefor. These bills of lading were attached to drafts drawn by McGarrity on the Newberger Cotton Company, payable to Moreland & Townes, who collected same in the usual course of business. After some delay, evidently due to Moreland & Townes' desire to be fully advised as to their legal rights and obligations, they paid McLemore for the twenty-eight bales of burned cotton. The firm having dissolved, and Moreland having by written assignment succeeded to all the rights of the partnership, he brings this suit against the Newberger Cotton Company for the value of the twenty-eight bales at the agreed price of eleven and three-eighths cents per pound.

The action was for cotton sold and actually delivered. On the trial the above facts were disclosed, and it was further shown that it was the custom for the Newberger Cotton Com-

pany, in purchasing what may be called "railroad cotton"—that is to say, cotton which would naturally be shipped by rail—to pay for same only after delivery to the carrier, and upon presentation of a draft with the railroad bill of lading attached. It was also shown that this custom required the seller to look after this delivery of the cotton to the carrier and the procuring of the bill of lading. It should be stated that McLemore's gin was situated on the railroad, and was provided with a spur or industrial switch, and that cotton shipped from McLemore's was loaded on the car at the gin and bill of lading secured from the agent at Gerin, the most convenient station where an agent was maintained, and this course was pursued with all the bales, except, of course, the twenty-eight that had been burned. There being evidence, as stated, to show the existence of this custom as to delivery and payment, the defendant, at the conclusion of the plaintiff's testimony, made a motion for a peremptory instruction, not introducing any testimony on its own behalf. This motion was fully argued and sustained by the court. After the motion was sustained, but before the jury had entered its formal verdict in accordance with the peremptory charge, plaintiff asked permission to reopen the case and introduce evidence tending to show that "it was not the custom in the section where the cotton is alleged to have been sold to sell the cotton to the cotton buyer uniformly by draft with the bill of lading attached, and that, on the contrary, it was the custom for cotton to be sold and paid for by the cotton buyers at Phillipp and near Phillipp, where the cotton is alleged to have been purchased, by check and draft without bill of lading attached, and that numerous sales were made by plaintiff to defendant in that section where drafts with bill of lading attached were not given, and for which checks or drafts were given without bill of lading being attached for the cotton." This request was denied, and a directed verdict was entered for the defendant. This action of the trial court is defended on two grounds: (1) The contract of sale was invalid

under the statute of frauds.    (2) There was no such delivery of cotton to the Newberger Cotton Company by Moreland & Townes as sufficed to pass the title, so that the cotton was thereafter held at the purchaser's risk.

The first of these contentions need not give us much concern. The statute of frauds by its very terms has no application to sales of personal property where the buyer has received part of the personal property.    Here it is undisputed that the defendant had actually received and paid for at least thirty-three bales of the cotton stored at McLemore's gin, and this brings the case squarely within the holding in *Stonewall Mfg. Co. v. Peek*, 63 Miss. 342.    We feel certain that the accomplished judge below did not base his peremptory instruction upon any failure to satisfy the statute of frauds.

The second proposition is much more serious.    The argument here has two somewhat distinct aspects.    It is said in the first place that title to the cotton in controversy had not passed from McLemore to Moreland & Townes, and, this being true, Moreland & Townes could not make delivery to the Newberger people.    We think this contention cannot prevail, in the light of the contract between the parties and the testimony as to what happened on the afternoon of October 21st, when McGarrity and Townes visited the gin.    It is to be noted that by the terms of the contract delivery was to be made at McLemore's gin, and payment to be made when the cotton was delivered and the gin weights furnished.    McLemore testified that he delivered the cotton to Moreland & Townes on that afternoon, and was cognizant of the alleged sale to the Newberger Cotton Company.    We observe here that delivery of property sold is often one thing, and payment therefor quite a different thing.    We think the contract between these parties, as understood and acted upon by them, meant that payment should not be made until after delivery and examination of the gin weights.    In any event, it cannot be said as a matter of law that there was no delivery, as between McLemore and Townes,

merely because at the time the gin weights had not been submitted. Payment might as well have been deferred by agreement, although required by the contract, if the intention to deliver existed in the minds of all the parties, and this intention we think is clearly shown by this testimony.

Coming, now, to the question of whether delivery was shown to the Newberger Cotton Company, we need hardly repeat the well-understood principle, that this is essentially a question of fact, determined in this case largely by the intention of the parties. We need not consider in this case anything except the single question of delivery. For here nothing remained to be done to transfer the title except to deliver, since the identical cotton had been pointed out, examined, sampled, and priced, and the company notified of the purchase. Now, under ordinary conditions, in the absence of evidence as to the custom between the parties as to placing the cotton by the seller in the hands of the railroad company for shipment and the method of making payment, it would be tolerably clear that the delivery was complete when the identical property sold or attempted to be sold has been pointed out and examined, and the terms and price agreed on. So that we can find no justification for the peremptory instruction in defendant's favor except the custom shown to exist between the parties as to payment and placing the cotton in the possession of the railroad company for transportation. We think this is a delicately balanced question. Let it be granted that this custom is fully proved; what certain deductions are to be drawn therefrom? Can it be certainly said as a matter of law that, because the seller has been accustomed to place the cotton in the hands of the carrier and draw for the price with bill of lading attached, no legal delivery could exist until these things had been done? It can hardly be maintained that the time or method of payment will of themselves control the question of delivery. It may have been, as suggested by counsel, that the seller placed the cotton with the railroad company merely as an act of ac-

commodation to the buyer, or even that this was an implied condition of the sale, without thereby postponing the delivery until the cotton was deposited with the carrier and bill of lading secured. Might I not agree with a purchaser to take my chattels at an agreed price, with the express understanding that delivery was then completed, but further agree to prepare them for shipment and wait for payment until this bill of lading is issued? To propound this query is to answer it.

What conclusion is to be drawn from the proved facts in this case upon the question as to when the parties intended that delivery should be completed? This is the vital point in the case, and is essentially a question of fact. In this state of the record we are forced to conclude that the learned judge should have permitted plaintiff, even after argument, to reopen his case and prove, if he could, the nonexistence of the custom as to payment, upon the existence of which defendant's whole case rested. The peremptory instruction can be justified only upon the idea that there was no conflict in the testimony, and the plaintiff ought to have been permitted, we think, though the application was out of time, to go before the court and jury upon all the facts of his case. The right of the cause demanded it in this particular case, and we think that the discretion of the court in this particular was not properly exercised. But, aside from this, we do not think a peremptory instruction should have been given, even though there was no conflict in the testimony as to what actually happened between the parties. It is a misconception of the law to say broadly that every case should be taken from the jury merely because there is no conflict in the testimony. The fundamental question here is as to the intention of the parties, and this intention is, of course, to be gathered from the course of dealing between them, the acts performed, and the language uttered at the time the transaction is had. But it is peculiarly for the jury in this precise state of case to say what conclusion should be drawn from all the proven facts and circumstances here in evidence. It is for the

jury to consider what weight shall be given to the custom shown as affecting the fact of delivery. It may be that the evidence is not conflicting; but it may well be characterized as equivocal, and in such case it is for the jury to say what construction is to be put upon the acts of the parties. *Gibbons v. Robinson,* 63 Mich. 146, 29 N. W. 533; *Merchants' Nat. Bank v. Bangs,* 102 Mass. 291; *McLaughlin v. Marston,* 78 Wis. 670, 47 N. W. 1058.

Justice MAYES desires it said on his behalf that, while he concurs in the conclusion that the judgment should be reversed, he is of the opinion that the evidence of the custom between the parties in this case was improperly admitted, and, if admitted, does not even tend to show that delivery was contemplated elsewhere than at the place where the cotton was sold. He thinks that the peremptory instruction should have been for the plaintiff. The other members of the court, however, think that the case is for the jury.

*Reversed and remanded.*