Townes & Sturdivant *v.* Edward Holland & Co.

[77 South. 525, Division B.]

1. SALES. *Delivery. Question for jury.*

   Whether under the facts of this case a sale of cotton on the seller's
   gin platform was with the understanding that the delivery was
   then complete, so that the cotton was thereafter at the buyer's
   risk, was a question for the jury.

2. SAME.

   A custom to draw with the bill of lading attached does not neces-
   sarily carry with it the idea that a sale is not complete until
   this formality is complied with.

3. SAME.

   Under the facts in this case the fundamental question was as to
   the intention of the parties and such intention was to be gathered
   from the course of dealing between the parties of the contract,
   the acts performed and the language uttered at the time the
   transaction was had.

Appeal from the circuit court of Washington county. Hon. Sam J. Osborn, Special Judge.

Suit by Townes & Sturdivant against Edward Holland & Co. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*R. B. Campbell,* for appellant.

The rule is so well settled by the many decisions of our supreme court as to when it is proper for the court to give a peremptory instruction to the jury as to how they should return their verdict, that I deem it useless to cite the cases on that point. Suffice it to say that, to my mind, the case of *Moreland* v. *Newberger Cotton Company,* 94 Miss. 572, is all sufficient to justify the assertion that the court below erred in giving a peremptory instruction for the appellees, and that, because of that error, the judgment of the court below should be reversed. That case and the instant case are on "all fours." They are as similar in their essential facts as any two cases that have ever come under my observation.

Let me repeat, for the sake of comparison, that, in that case, the cotton had been pointed out, examined, sampled and the price agreed on, and the point of contention was as to whether there had been a sufficient delivery of the cotton to pass title to the purchaser; and, inasmuch as it was shown by uncontradicted evidence that a custom existed between the parties, in such cases, to the effect that the seller was to deliver the cotton to the railroad, obtain a bill of lading therefor, and draw for the price with the bill of lading attached, the court below gave a peremptory instruction for the defendant.

In the case at bar, the cotton had been pointed out, marked, examined, sampled and the price agreed on, and the point of contention was as to whether there had been a sufficient delivery of the cotton to pass title to the purchasers; and, inasmuch as it appeared, from the

evidence in behalf of the purchasers (appellees), that the sellers (appellants), were instructed to ship the cotton to Itta Bena, obtain a bill of lading therefor, and to draw on appellees, at Greenville, at three days' sight for the price with the bill of lading attached, and inasmuch as it appeared from the evidence of B. E. Townes, one of the sellers (appellants), that, while nothing was said about attaching a bill of lading to the draft, that was the way he intended to draw for the price, the court gave a peremptory instruction to the jury to find for the defendants (appellees).

Now assuming, for the present, that there was no other evidence affecting the question of delivery, the duties devolved upon the sellers in this case were the same as the duties devolved upon the sellers in the Newburger Cotton Company case. In both cases, the cotton was to be shipped, a bill of lading obtained, and a draft drawn for the price with the bill of lading attached. In the one case, that was to be done because of an existing custom between the parties while in the other, it was to be done because of instructions from the purchaser. In principle, there could be no difference as to the effect of such custom and effect of such instructions. If, therefore, it was error, in the one case, to grant a peremptory instruction for the purchaser, it was error in the other case to do so.

*Percy & Percy,* for appellee.

The question is whether the contract had been completed so as to vest title to the cotton in appellees at the time of the fire. It does not seem necessary to make any elaborate argument on this question under the foregoing facts. The testimony is singularly free from conflict, and the decision of the case rests upon elementary principles of law, and according to those principles there was no complete contract, and the title to the property remained in the vendors.

The basic principles governing a sale of personal property is that when, under the terms of the sale, the buyer has done all he has agreed to do, and the seller has done what he has agreed to do, the sale is complete and title to the property passes, or to state it conversely, as long as there remains anything to be done under the contract by the buyer or by the seller, title does not pass. In the absence of agreement, express or implied, and the decisions usually turn upon either a conflict in the testimony as to such waiver, or whether there has been an implied waiver in the absence of any express agreement deducible from the actions of the parties evidencing their intent. The buyer can waive delivery; that is, he can accept the article where it is located at the time of the trade, and in the absence of a stipulation for a special kind of delivery does, by implication, accept delivery of the property where it is located. On the other hand the seller can part with title to his property and give credit to the buyer, but this must be express contract, or by acts from which such intent may be inferred. In the case at bar the buyer contracted for a delivery to the railroad and the seller contracted for a cash payment. The cotton was not delivered; nothing done towards this delivery, and the price of the cotton was not paid. The two essential elements to a change in title were lacking. There is nothing in the evidence that raises a conflict on these two essential propositions. There is entire unanimity in the testimony that Fordham directed the delivery of the cotton to the railroad. There is nothing to suggest that this was to be done as a matter of accommodation by the seller, or that it was not one of the terms of the sale agreed upon; and under this provision of the contract Townes immediately got busy with the railroad to get cars in order to make a delivery of the cotton.

The cotton was to be paid for before title passed. There is no conflict on this proposition. Fordham testifies that he instructed the cotton to be shipped with three days'

sight draft with bill of lading attached. Townes testified that he does not remember the instruction about attaching the bill of lading, but that the sale was a cash sale, and he intended to attach it, and was interested in getting the bill of lading so that he could attach it to his draft and get paid for his cotton. Is there anything in this testimony which suggests a doubt as to the terms of sale? Anything to indicate that the purchaser intended to waive delivery, or that the vendor intended to part with the title to his property without being paid for it?

Where a sale is for cash, payment precedes the transfer of title, and, until made, title remains in the seller who may, on the buyer obtaining possession without payment, recover possession in trover. *Sharp* v. *Hawkins,* 107 S. W. 1078; *Howard* v. *Hess,* 109 S. W. 1076; *French* v. *Lewis,* 11 L. R. A. (N. S.) 948; 35 Cyc., 169; 35 Cyc., 287; 35 Cyc., 334; *Bank of Rochester* v. *Jones,* 4 N. Y. 497, 55 Am. Dec. 290; *Indiana National Bank* v. *Colgate,* 4 Daly 41; *Alderman* v. *Eastern R. Co.,* 115 Mass. 233; Note to 2 L. R. A. (N. S.) 79; see, also, *Greenwood Grocery Co.* v. *Canadian County Mill & Elevator Co.,* 2 L. R. A. (N. S.) 79, and also note to 2 L. R. A. (N. S.) p. 1079; *Downs* v. *National Exchange Bank,* 23 Law Ed. 214, and 35 Cyc., 334.

There are no Mississippi cases contravening this recognized principle, the court holding in various cases that where everything has been completed, title to the property may pass without an actual delivery, such delivery not being stipulated for. *Stamps* v. *Bush,* 7 How 255; *Jordan* v. *Harris,* 31 Miss. 257; *McKay* v. *Hamblin,* 40 Miss. 472; *Smith* v. *Sparkman,* 55 Miss. 652; *Merchants & Manufacturers' Bank* v. *Toomer Lumber Co.,* 76 So. 565.

Counsel cites *Johnson* v. *Tabor,* 101 Miss. 78, but apparently places his chief reliance upon *Moreland* v. *Newberger Cotton Co.,* 94 Miss. 372. The first case merely holds that where a sale of personal property is otherwise complete, delivery between the parties to the con-

tract is not necessary, in order to invest the purchaser with title thereto, unless delivery was required by the contract as a condition precedent to the vesting of the title and the completion of the sale. There is nothing in this case to help appellants. The price agreed upon had been paid, and it was quite evident that the delivery was waived.

But counsel thinks that the latter case is on all fours with the case at bar, in fact he assures the court that the cases in their essential facts are as similar as any two cases which have come under his observation. We assure the court that in their essential facts, that is, in the facts the construction of which are essential to a proper de-termination of the two cases, there is no similarity. The very difference in the facts makes a peremptory instruction improper in the one case and proper in the other.

Cook, P. J., delivered the opinion of the court.

Townes & Sturdivant, appellants, sold to Edward Holland & Co., appellees, who were cotton buyers at Greenville, Miss., one hundred and eighty-four bales of cotton lying on appellant's gin platform at Glendora, in Tallahatchie county, Miss. The sale was made in the afternoon of September 21, 1916, between two and three o'clock. At eleven o'clock that night one hundred and twenty-seven bales of said cotton were destroyed by fire, and afterwards the fifty-seven bales not destroyed were delivered to appellees and paid for by them. Appellees refused to pay for the cotton destroyed, and thereupon appellants brought this suit to recover the price of the destroyed bales. Appellees pleaded the general issue; and at the conclusion of the evidence the court, at their request, gave a peremptory instruction to the jury to return their verdict for the appellees.

The disputed point in issue was the delivery of the cotton. The court was evidently of the opinion that the evidence, taken as a whole, shows that the sale was in-

complete. The cotton was on the gin platform of appellants lying between the track of the Yazoo & Mississippi Valley Railroad Company on one side and the Southern Railroad Company on the other side. The cotton was numbered and marked, and it had been sampled and graded by appellees' agent, and he, together with other bidders, submitted sealed bids, all of which were rejected by appellants. Appellee's agent on the ground called up appellees on the telephone and reported the facts to appellees' manager at Greenville, giving the number of bales, the grade, staple, and the price he had offered, which had been declined. The manager Mr. Fordham, then had a conversation over the phone with B. E. Townes, a member of appellants' firm. This conversation finally resulted in a sale of one hundred and eighty-three bales of the cotton at twenty-five cents per pound and one bale at twenty-two and one-half cents per pound. Both Frodham and Townes testified about the substance of this conversation, and they only differed about the method of shipment and payment. Townes said the sale was then and there completed, and that Fordham instructed him to ship the cotton to the Itta Bena Compress for appellees' account and to draw on appellees a three days' sight draft for the price. Fordham's version of the conversation was that he instructed Townes to ship the cotton, and to draw on appellees at Greenville a three days' sight draft for the price, with bill of lading attached. Townes said that, if anything was said about attaching the bill of lading, he did not hear it, but he further stated that he intended to draw with bill of lading attached, because, he said, no cotton buyer would pay a straight draft without bill of lading attached. It will be observed that there was no substantial difference between the witnesses as to the facts.

Mr. Townes testified that on the day after the fire appellees phoned him to confirm the sale of the cotton,

and in response to this request he wrote the following letter, dating it on the day of the sale and fire, viz.:

     "Glendora, Miss., Sept. 21st, 1916.

 "Edward Holland & Co., Greenville, Miss.—Gentlemen: This is to certify that we confirm sale made over phone to-day for one hundred and eighty-three bales of cotton at twenty-five cents per pound and one bale of cotton sold to your buyer, Mr. Dave Humphrey, at twenty-two and one-half cents per pound.

  "Yours very truly, Townes & Sturdivant."

The record shows that appellees, on the day after the fire, wrote this letter to the Standard Marine Insurance Company:

        "Sept. 22, '16.

 "J. W. Roberts, Mgr. Standard Marine Ins. Co., 63 Beaver St., New York, N. Y.: Just heard one hundred twenty-four bales burned. Sixty bales badly damaged, consisting of purchase one hundred eighty-four bought yesterday afternoon from Sturdivant & Townes at Glendora, Mississippi. How shall we act in the matter?

      Edward Holland & Co."

On the same day, this letter was written to Townes & Sturdivant, viz.:

    "Greenville, Miss., Sept. 22, '16.

 "Messrs. Sturdivant & Townes, Glendora, Mississippi —Dear Sirs: As we will have the Standard Marine Co.'s representative at Glendora Monday, we will ask you to send us in an invoice made up from your gin weights of the one hundred and eighty-four bales burned. Kindly do this at once and give us all particulars about the fire. Thanking you for your trouble.

 "Yours truly,   Edw. Holland & Co."

 Inasmuch as the trial court instructed the jury peremptorily to find for the defendant, the whole record and all of the evidence offered and excluded, as well as the evidence sought by the plaintiff, comes under review.

The narrow point, the single point, presented by this appeal, is the question of delivery. This court in *More-*

*land* v. *Cotton Co.,* 94 Miss. 572, 48 So. 187, propounded this question and gave the answer thereto, viz.:

"Might I not agree with a purchaser to take my chattels at an agreed price, with the express understanding that delivery was then completed, but further agree to prepare them for shipment and wait for payment until the bill of lading is issued? To propound this query is to answer it."

We have examined this record in its entirety, and in the light of the principles announced in *Moreland* v. *Cotton Co., supra,* it seems clear that this was a case for the determination of a jury. The jury might have reasonably concluded that the sale of the cotton was complete.

"The fundamental question here is as to the intention of the parties, and this intention is, of course, to be gathered from the course of dealing between them, the acts performed, and the language uttered at the time the transaction is had."

It will be noted that one of the judges in the Moreland Case thought that a peremptory instruction should have been given for the plaintiff.

This case, if not "on all fours" with the Moreland Case, is certainly strikingly similar, and is controlled by the principles announced in that case. The jury would have been warranted in believing that the sale was completed; that the cotton had been delivered, and was, at the time of the fire, the property of appellees, and to execute the contract the payment of the agreed price was the only thing left undone.

The letters of appellees to the insurance company were pertinent, as tending to show their understanding of the transaction, and were in accord with the contention of plaintiffs. It is manifest that Townes & Sturdivant thought they had sold the cotton, and a jury would be warranted in believing that the defendants were of opinion that they owned the cotton, else why should they have corresponded with the insurance company? The trial

judge erred in excluding evidence which might have influenced the jury in arriving at a verdict.

We do not think that a custom to draw with the bill of lading attached necessarily carries with it the idea that a sale is not complete until this formality is complied with. The question is at last, in all cases wherein contracts of sale are involved: What was the understanding of the parties to the transaction? Viewing the contract in the present case from the standpoint of appellants, we are unwilling to say that the sale was not complete because the cotton had not been delivered to the carrier. It seems reasonable to say, from all the evidence admitted and excluded, that the trade was closed, and the title to the cotton was vested in the buyer. The sale was executed, and the only thing left undone was the payment of the agreed price.

In the numerous cases reported in the books the decisions rest upon the facts of each case. We think the facts in this case are very near akin to the facts in *Moreland* v. *Cotton Co., supra,* and the court should have submitted the facts to the jury to determine the intention of the parties. This court, in *Moreland* v. *Cotton Co.,* said:

"So that we can find no justification for the peremptory instruction in defendant's favor except the custom shown to exist between the parties as to payment and placing the cotton in the possession of the railroad company for transportation. We think this is a delicately balanced question."

So say we in this case.

*Reversed and remanded.*