## A. K. Burrow & Co., Inc., *v.* Planters' Oil Mill & Gin Co.*

(Division A.   Feb. 16, 1925.)

[103 So. 9.   No. 24651.]

1. FRAUDS, STATUTE OF. *Receipt of property by buyer to satisfy statute must be by taking possession and control with intent to become owner.*

   In order for a buyer to receive property or a portion thereof so as to satisfy the requirement therefor of the statute of frauds (section 4779, Code of 1906; Hemingway's Code, section 3123), he must take it into his possession and control with intent to become the owner.

2. WAREHOUSEMEN. *Warehouse company issuing negotiable receipts for property stored holds it for holder of receipts and must account to him therefor.*

   A warehouse company which has issued negotiable receipts for property stored with it holds the property for the holder of the receipts and must account to him therefor.

3. FRAUDS, STATUTE OF. *Drawing draft by seller on purchaser for price of property sold with negotiable warehouse receipts attached is not delivery if buyer refuses to pay and accept receipts.*

   The delivery of property sold to a warehouse company and the drawing of a draft by the seller on the purchaser for the price thereof, with the negotiable warehouse receipts for the property attached to the draft, is not a compliance with the requirement of the statute of frauds as to delivery if the buyer declines to pay the draft and accept the warehouse receipts.

---

*Headnotes 1.   Frauds, 27 C. J., section 274;   2.   Warehousemen, 40 Cyc., p. 413 (1926 Anno);   3.   Frauds, 27 C. J., section 292 (1926 Anno).

APPEAL from circuit court of Attala county.

HON. T. L. LAMB, Judge.

Action by the Planters' Oil Mill & Gin Company against A. K. Burrow & Co., Inc.   From judgment for plaintiff, defendant appeals.   Reversed and judgment rendered.

*Watkins, Watkins & Eager,* for appellant.

I.   The contract sued on is void for noncompliance with the statute of frauds. No part of the purchase money was ever paid by the appellant, and the appellant never received the property or any part thereof.   Upon the other hand, the possession, control, dominion and title to the property was at all times retained by the appellee.

The appellee took the thirty bales of linters, deposited the same with the warehouse company, taking warehouse receipts therefor in the name of the appellant, but the receipts were never to be delivered until the appellant should pay the purchase price, and were at all times retained in the possession of the appellee.

This court has already decided that, under such circumstances, the custody, control, dominion and title to the property is retained in the seller.   *Longino* v. *Bank,* 76 Miss. 395.   Reported cases demonstrate that there has been no compliance with the statute of frauds, Section 3123, Hemingway's Code; *Daniel* v. *Frazier,* 40 Miss. 507; *Moore* v. *Love,* 57 Miss. 765; *Young* v. *Alexander,* 123 Miss. 708; *Mayhew Canning & Preserving Co.* v. *Cohen,* 99 So. 896.

II.   There was by the conduct of the parties an abandonment of this contract, which discharged each of the parties thereto from any obligation to perform.   In this case, the appellee, in its declaration, bases its right of recovery on the ground that, instead of making the shipment f. o. b., with bill of lading attached to sight draft, as was usually the case, the delivery ·was made to the warehouse; the seller, however, reserving all title to the property until payment made.

According to the plaintiff's declaration, it was to put the linters in the warehouse, and as soon as it did so, was then to draw at once on the appellant, with warehouse receipts attached to a sight draft for the purchase money. The appellee is bound by its pleadings.   *Carradine* v. *Carradine,* 33 Miss. 698, 21 C. J. 1064.

There is no contention in this case that the appellant was under any obligation, at any specific time, to order and direct that draft be made on it with warehouse re-

ceipts attached. In other words, there was no default so far as the appellant was concerned, unless the default occurred July 25th, when the draft with warehouse receipts attached was presented and payment refused. It was the duty of the appellee, when the linters were stored in the compress to make draft with the warehouse receipts attached. It is true that if the appellant had made demand that draft be drawn, the appellee might have complied with the request and done so; but there is nothing in the record to disclose that the appellee would or would not have done so. Suffice it to say that the record shows undisputedly that if, within a reasonable time, after the linters were placed in the warehouse, the draft had been drawn with warehouse receipts attached, the appellant was ready, able and willing to accept the draft and pay therefor, and the reason the appellant did not pay the draft was that the appellee, instead of doing what it alleged in its declaration it was its duty to do, waited three months until the market had dropped two and three-fourths cents per pound, and then made the draft, and the appellant refused to pay the draft upon the specific ground that the appellee had delayed making the draft until the market had dropped.

We submit, as a matter of law, that the failure of the appellee to draw on the appellant with warehouse receipts attached, within a short time after storing the linters in the warehouse, was an abandonment of the contract on the part of the appellee, and the failure of the appellant to demand that the draft be drawn with warehouse receipts attached was an abandonment of the contract on the part of the appellant. 13 C. J. 601; 3 Williston on Contracts, par. 1826, p. 3144; 3 Elliott on Contracts, par. 1861; *Haigler* v. *Adams* (Ga.), 63 S. E. 715.

*J. G. Smythe,* for appellee.

The assumption by the appellant's counsel in this case in their brief that this is a contract which comes within the statute of frauds is not well founded, and is not sup-

ported by any of the evidence in this case. The cases cited by them and the rules of law invoked do not apply in this case. This was a sale and delivery. There is no testimony in this record, not even that of the defendant himself, which justifies the conclusion that this controversy falls within the statute of frauds.

In the case before the court, the appellant bought the cotton from the appellee and directed that it be delivered for it to the Attala Warehouse & Compress Company The fact that a draft had not been drawn and the money had not been paid does not prevent this being a delivery of the cotton which had been bought. In all the cases cited by appellant on this point the delivery was a constructive delivery. But there was an actual delivery in this case.

Ordinarily under the general rule of law in this jurisdiction and most others the question of whether or not there was a delivery is one for the jury; that is, where there is a question as to whether or not there was a delivery. Where there is not an actual manual delivery of the property the court universally holds this to be true. *Johnson* v. *Tavor,* 101 Miss. 78; *Moreland* v. *Cotton Co.,* 94 Miss. 572; *Towns* v. *Holland,* 116 Miss. 541.

From all the evidence in this case there remains no doubt in the mind of the court as to what the intention of the parties was in regard to this transaction. The cotton was inspected, tagged, marked and set apart and designated to be delivered at a certain and definite place for the appellant. The delivery was made at the place designated for the appellant, and there remained nothing further for the plaintiff to do in the matter with regard to the cotton after it reached the warehouse. The only thing that remained for the plaintiff to do was to draw and get its money. We submit that there might be some question as to whether this plaintiff could recover in this case if there had been any definite time as to when he was to draw and he had not drawn within that time.

There was no reservation of title to this cotton; on the other hand there was an absolute surrender of this cotton to the warehouse company for the appellant. There was no agreement to draw at once; in fact there was no stipulated time for the drawing.

SMITH, C. J., delivered the opinion of the court.

This is an action in which the appellee, the plaintiff in the court below, seeks to recover from the appellant damages for the breach of an alleged contract for the sale by the appellant to the appellee of cotton linters.

The question presented by the record is whether or not the contract sued on violates the statute of frauds. The facts, in substance, are as follows: The appellant agreed to purchase from the appellee thirty bales of cotton linters at a price in excess of fifty dollars. Its representative inspected the cotton, placed a tag with the appellant's name on each bale thereof, instructed the appellee to store the cotton in a warehouse, and to attach the receipts therefor to a draft on the appellant for the price of the cotton and the draft would be paid on presentation. The appellee stored the cotton in a warehouse and received from the warehouse company negotiable receipts therefor, and about two months thereafter it made a draft on the appellant with the warehouse receipts attached thereto; but the appellant declined to pay the draft. The cotton was then sold by the appellee for less than the price which the appellant had agreed to pay therefor, and this suit was brought to recover the difference.

No part of the purchase money having been paid, the contract for the purchase of the cotton is void under the statute of frauds (section 4779, Code of 1906; Hemingway's Code, section 3123), unless the storing of the cotton in the warehouse was a delivery thereof to the appellant. The provision of this statute that, "A contract for the sale of any personal property, goods, wares, or merchandise, for the price of fifty dollars or upward, shall not

be allowed to be good and valid unless the buyer shall receive part of the personal property, goods, wares and merchandise,'' etc., can be complied with only by the buyer taking the property or a part thereof ''into his possession and control with intent to become the owner.'' *Young* v. *Alexander,* 123 Miss. 708, 86 So. 461.

It is true that the property may be received for the buyer by an agent authorized so to do, but the warehouse company here held the cotton as the agent of the holder of the receipts issued by it therefor (sections 8 and 41, chapter 218, Laws of 1920; Hemingway's Code, Supplement 1921, sections 7957h and 7957o1; *Love* v. *People's Compress Co.* [Miss.], 102 So. 275), with the control of which receipts the appellee never parted. Consequently, the control and, in so far as the statute of frauds is concerned, the possession also of the cotton remained at all times with the appellee.

The cases of *Johnson* v. *Tabor,* 101 Miss. 78, 57 So. 365, *Moreland* v. *Newberger Cotton Co.,* 94 Miss. 572, 48 So. 189, and *Townes* v. *Holland,* 116 Miss. 541, 77 So. 525, relied on by the appellee, are not here in point, for the statute of frauds was not therein involved. The question decided in those cases was whether title to the property sold had passed, and, under a contract otherwise valid, title to property sold may pass without delivery if the parties so intend.

The judgment of the court below will be reversed, and judgment rendered here for the appellant.

*Reversed, and judgment here.*