INZER, Justice:
Appellant, John C. Howell, brought suit in the Circuit Court of Leflore County on a past due note for $10,000 executed by appellees, Lewis Buford and J. L. Pullen. Appellees admitted the execution of the note in their answer but by way of setoff alleged indebtedness owing them under oral agreements for the sale of fertilizer and for employment. At the close of the trial the judge refused a peremptory instruction offered by appellant directing the jury to find for the appellant in the amount of $9,500 and the jury returned a verdict of $3,500.94, plus $525.14 in attorney’s fees. We find that the trial judge was in error in refusing the peremptory instruction and reverse and enter judgment for appellant in the amount of $9,500, plus interest and a reasonable attorney’s fee.
The appellant, Howell, is a real estate agent who in March 1966 was represent *861 ing a buyer in negotiations with appellees over the purchase of their 3,300 acre plantation in Clarke and Wayne Counties. It had been agreed that if the sale went through appellees would pay appellant a commission of $20,000, $10,000 in cash and a note for the remaining $10,000.
Taking appellees’ evidence of the alleged oral agreements as true and all the reasonable inferences that can be drawn therefrom, the following version may be established.
On March 16, 1966, after lengthy negotiations, appellant approached appellee Buford with a contract for the sale of the plantation which had already been signed by appellee Pullen and the buyer. Buford indicated that he would not sign the contract until some agreement was reached with regard to the fertilizer remaining on the plantation. The fertilizer, in liquid form, was contained in the two large tanks which appellant had inspected on an earlier occasion. In reply to this condition appellant is alleged to have answered, “If you will go ahead and sign that contract, I will personally be responsible for the fertilizer.” Neither the quantity nor the price of the fertilizer was discussed at the time, although Buford testified that they both understood it to be worth around $5,000. Payment was to be made within thirty days by check. At the trial an invoice was introduced which showed that the fertilizer when it was originally delivered was worth $5,999.06. Buford also testified to an oral agreement to retain the services of appellee Pullen as manager in the transition period before the new owner came to Mississippi. The alleged agreement was for Pullen to stay on for thirty days for which he would be paid $500 by appellant. This agreement is not in question because the peremptory instruction for $9,500 concedes this point.
On March 24, 1966, the deed of the plantation was conveyed pursuant to the contract and appellant was paid his commission, $10,000 in cash and the note upon which this case is based. The due date of the note was January 15, 1967. There is no mention of the alleged oral agreements in the contract, the deed or the note.
All of the testimony both for and against appellee establishes that the fertilizer remained in the tanks on the plantation from the time of the alleged agreement until at least a month after the deed had passed to the buyer and insofar as the record reflects is still there. There was no testimony that appellant ever returned to the plantation after the sale or in any >vay exercised control over the fertilizer he allegedly had agreed to purchase. In his answer to the affirmative matter of the setoff appellant denied that the oral agreement was ever made and when the appel-lees attempted to testify appellant objected that the agreement, even if true, violated Mississippi Code 1942 Annotated, Section 268 (1956), commonly known as the statute of frauds.
It is clear that the oral agreement alleged by appellees is within the purvey of Section 268, supra, and the agreement is not enforceable unless it can be brought under the exceptions contained therein for an executed contract or part performance thereof. There is no evidence in the record which indicates that the fertilizer was ever delivered to appellant under the established law of this State and there is no merit in appellees’ contention that the delivery of the land to the purchasers constituted a delivery of the fertilizer to appellant. Entrekin v. Byrd, 149 Miss. 340, 115 So. 562 (1928); A. K. Burrow & Co., Inc. v. Planters’ Oil Mill & Gin Co., 138 Miss. 284, 103 So. 9 (1925); Young v. Alexander, 123 Miss. 708, 86 So. 461 (1920).
It is the appellees’ contention that in agreeing to sign the sale contract there was such a part performance as to remove the agreement from the operation of the statute of frauds. In this contention they rely on Pugh v. Gressett, 136 Miss. 661, *862 101 So. 691, 38 A.L.R. 678 (1924), sug. of error overruled, Nov. 24, 1924. In that case a buyer offered to purchase a seller’s stock in a corporation for $10,000 if the seller would give up control of the corporation and his management job. The seller did relinquish control and gave up his job but when he tendered his stock the buyer refused to honor the deal. This Court held that the acceptance of seller’s job and control of the corporation was such a part performance to avoid the operation of the statute of frauds.
That the situation of Pugh, supra, is distinguishable from the one in this case can be seen from an analyzation of the policy considerations behind the part performance rule. If the part performance rule were not recognized there might be many cases where parties to an oral contract might be unjustly enriched by their refusal to carry through with their end of the deal. Also present, however, is the implied admission that an agreement did exist by the acceptance of part performance. Such an admission avoids the evil that the statute of frauds is aimed at, i. e., a swearing contest in the court between seller and buyer. It is apparent that the seller in the Pugh case would not give up a job and control of a corporation except in exchange for something else he considered more valuable. The acceptance of those things by the buyer was inconsistent with his position that the agreement between them is not enforceable under the statute.
In this case the part performance contended by appellees has only an indirect effect of enriching appellant. Moreover there is nothing in appellant’s acceptance of the signed contract that inherently implies an admission of any separate oral agreement.
Since the oral agreement alleged or proved was unenforceable under the statute of frauds the jury should not have been allowed to consider the evidence of that agreement in reduction of the amount owed on the note. The trial court was in error in refusing the peremptory instruction for $9,500 offered by appellant. Appellee raised some questions as to the form of the instruction, however, it is clear from the comment written on it by the trial judge that he considered it as peremptory, and refused it for that reason. While the wording of the instruction is somewhat confusing the question is its refusal as a peremptory instruction.
The note provided for a reasonable attorney fee in the event it was placed in the hands of an attorney for collection. Appellant introduced evidence that a reasonable fee was fifteen percent of the amount collected. Appellees did not offer any proof to the contrary. The jury allowed fifteen percent of the amount it improperly found due. Under these circumstances we are authorized to fix the fee in accordance with the proof. It will be fixed at fifteen percent of the principal and the interest now due.
There is a novel and lengthy point raised by the appellees over the failure of appellant to offer a motion for a new trial to the trial court. Briefly it is ap-pellees’ contention that when the Supreme Court adopted new rules in 1964 omitting former Rule 6(3) dealing with the non-necessity of motions for a new trial, we intended to return to the common law requirement that such motions be presented. Without lengthy discussion suffice it to say that our Foreword to that edition of the rules answers the question the appel-lees raise.
Former Rule 6(3), stating that the right of review is not dependent upon the filing of a motion for a new trial in the trial court, has been i deleted, because this aspect of the scope of appellate review is established by case law. (Foreword, Miss.Rules (1964)).
The case law we were referring to in the above quotation was that which developed after the adoption of the rule, not the common law rule. For one example see Weyen v. Weyen, 165 Miss. 257, 139 *863 So. 608, 856 (1932). Sug. of error overruled, February 29, 1932 and April 4, 1932.
That part of the judgment of the trial court which allowed appellees a set off of $500 for labor is affirmed, that part of the judgment which allowed a set off of $5,999.06 for the fertilizer is reversed and a judgment will be entered here for appellant in the amount of $9,500, plus interest at six per cent from the due date of the note, plus an attorney fee of fifteen percent of the principal and interest due.
Affirmed in part, reversed in part and judgment here for appellant.
GILLESPIE, P. J., and RODGERS, JONES, and BRADY, JJ., concur.